IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KLORIS TOLBERT YOUNGS, As          *
Executrix of the Estate of
deceased Christian Youngs,          *

    Plaintiff,                      *

vs.                                 *       CASE NO. 4:09-CV-141 (CDL

CONSOLIDATED GOVERNMENT OF          *
COLUMBUS, GEORGIA, et al.,
                                    *
    Defendants.
                                    *

O R D E R

This action arises from injuries suffered by Christian Youngs ("Youngs") while a pretrial detainee at the Muscogee County Jail ("Jail"). Specifically, Plaintiff contends that Youngs was seriously injured when another Jail inmate assaulted him and that Defendants failed to provide Youngs with timely medical care. Plaintiff claims that Defendant Columbus Consolidated Government ("Columbus" or "the City") violated Youngs's Fourteenth Amendment rights by failing to train the employees of the Muscogee County Sheriff ("Sheriff") on the provision of medical care in the Jail.[1] Plaintiff also asserts individual capacity claims against four employees of the Sheriff for the allegedly inadequate medical care.[2]

---

[1] The Columbus Consolidated Government is comprised of both Muscogee County and the City of Columbus.

[2] The Sheriff is not a Defendant in this action, though the Complaint is based on the acts and omissions of the Sheriff's employees.

Presently pending before the Court is the City's summary judgment motion. For the reasons set forth below, the motion (ECF No. 18) is granted as to Plaintiff's claims against Columbus. The individual Defendants did not move for summary judgment as to Plaintiff's claims against them, and Plaintiff's claims against the individual Defendants remain pending.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## PREVIOUS SUMMARY JUDGMENT ORDER

Youngs previously filed an action in this Court, *Youngs v. Johnson*, 4:06-CV-19 (CDL), asserting claims similar to those alleged

in the present action. In that prior action, Youngs sought recovery from Columbus, the Sheriff, and certain employees of the Sheriff for several alleged Fourteenth Amendment violations. Youngs died after the pretrial conference but before the trial in that action, and the case was later dismissed without prejudice.[3]

In the prior action, Youngs alleged that the Sheriff and Columbus violated Youngs's Fourteenth Amendment rights by failing to train Columbus employees on (1) classification and placement of inmates and (2) the provision of medical care.[4] *Youngs v. Johnson*, No. 4:06-CV-19 (CDL), 2008 WL 4816731, at *4 (M.D. Ga. Oct. 30, 2008). In that action, the Sheriff and Columbus moved for summary judgment. The Sheriff argued that Eleventh Amendment immunity barred Youngs's claims against him, and Columbus argued that Youngs had failed to point to a Columbus policy or custom that was the moving force behind the alleged Fourteenth Amendment violations that caused his injuries. *Id.* at *5, *8. Columbus further argued that it could not be held liable for the decisions of the Sheriff because the Sheriff was an "arm of the state" rather than an "arm of the county" when making decisions regarding medical care in the Jail. *Id.* at *9.

---

[3] Youngs's death was unrelated to the injuries he suffered at the Jail.

[4] Youngs also brought various state law claims against Columbus and the Sheriff, but the Court found that both Columbus and the Sheriff were entitled to summary judgment on those claims due to sovereign immunity. *Youngs v. Johnson*, No. 4:06-CV-19 (CDL), 2008 WL 4816731, at *11 (M.D. Ga. Oct. 30, 2008).

3

The Court found that the Sheriff was entitled to Eleventh Amendment immunity as to the claim arising from the placement of Youngs and the inmate who assaulted him, and the Court therefore granted the Sheriff's summary judgment motion as to that claim. *Id.* at *6. The Court also found that Columbus was entitled to summary judgment on the classification/placement claim because Youngs failed to produce evidence of a Columbus policy or custom that was the moving force behind Youngs's injuries. *Id.* at *9.

The Court held, however, that neither the Sheriff nor Columbus was entitled to summary judgment on Youngs's inadequate medical treatment claims. The Sheriff's summary judgment argument was based exclusively on his contention that a Georgia sheriff is an "arm of the state" rather than an "arm of the county" in providing medical treatment in a county jail. *Id.* at *6. The Court found that "the sheriff is an arm of the county in providing medical care in a county jail," *id.* at *8, so the Sheriff was not entitled to summary judgment on that claim. Columbus's summary judgment argument was based exclusively on its contention that the Sheriff was not a final policymaker for Columbus with regard to the provision of medical care in the Jail. *Id.* at *9 n.12. The Court found that genuine issues of material fact remained on that issue and therefore denied summary judgment on that basis. *Id.* at *9. The Court "express[ed] no opinion as to whether [Columbus] would be entitled to judgment as a

4

matter of law for other reasons not asserted by [Columbus]." *Id.* at *9 n.12. As explained more fully in the following discussion, Columbus now seeks summary judgment for reasons different than those asserted in the prior action.

FACTUAL BACKGROUND

**I.   The Incident**

In *Youngs v. Johnson*, the Court recounted the facts, viewed in the light most favorable to Youngs, regarding the incidents giving rise to Youngs's injuries. *See Youngs*, 2008 WL 4816731, at *1-*4. The parties have not submitted any additional evidence regarding the incidents giving rise to Youngs's injuries, and the Court therefore incorporates by reference the "Background" section of *Youngs v. Johnson*. In summary, Youngs was a pretrial detainee at the Jail, and he was a minimum security inmate assigned to a two-man cell away from the general Jail population. *Id.* at *2. On May 19, 2004, another inmate—who was a maximum security inmate with psychiatric issues and who had on one prior occasion attacked two inmates—was placed in the cell with Youngs. *Id.* at *3. While Youngs was asleep on the top bunk, the other inmate pulled him off the bunk, causing Youngs to fall to the floor. *Id.* Believing his leg was broken, Youngs screamed for help, but no one responded to his cell. *Id.* Youngs climbed back up to his bunk and fell asleep until several correctional officers came to his cell a few hours later, at

5

approximately 3:30 a.m.  *Id.*  At that time, Youngs informed the correctional officers about the incident.  *Id.*  He also told them that his leg was hurting.  *Id.*  One of the officers gave Youngs a medical request form, but no one checked on Plaintiff again until approximately 6:15 a.m.  *Id.* at *3-*4.  At 6:15, Youngs informed another correctional officer that his leg might be broken; the correctional officer consulted with two Jail nurses, who said that nothing could be done until the physician assistant arrived at the Jail later in the morning.  *Id.* at *4.  Youngs did not see the physician assistant until approximately 10:45 a.m.  *Id.*  The physician assistant sent Youngs to a hospital, where Youngs underwent surgery for a fractured hip.  *Id.*  No allegation is made that the delay in medical treatment exacerbated Plaintiff's injuries.

## II. Jail Policies and Procedures

The Muscogee County Sheriff promulgated a policy regarding the provision of emergency medical services in the Jail.  Under that policy, "[i]n the event a staff member discovers an inmate . . . who is in need of emergency medical attention, he is to immediately notify the Shift Supervisor of the situation and his location." Lucas Dep. Ex. 1, Oct. 5, 2006, Policy 5.5 - Emergency Medical Services Policy & Procedures, ECF No. 24.  Once the Shift Supervisor is notified of the situation, he must "summon appropriate assistance to the area including emergency medical personnel and jail staff,"

6

and the medical personnel must be permitted to render medical assistance to the inmate. *Id.* If necessary, the inmate must be transported to a hospital. *Id.* In a separate policy, Jail health care staff, including Jail nurses, are instructed to respond to the scene of a medical, dental, or mental health emergency and stabilize the inmate, then transfer the inmate to the health services unit or to an outside facility for further treatment. Lucas Dep. Ex. 2, Policy Directive re Emergency Services. It is undisputed that the correctional officers and Jail nurses involved in the incident at issue here were familiar with these policies.

It is also undisputed that, in non-emergency situations, inmates generally must fill out a medical request form in order to see a health care provider; but an inmate does not have to fill out a medical request form to receive emergency medical care. In determining whether there is a medical emergency, correctional officers consider, among other things, whether the inmate is bleeding, appears to be seriously injured, has an obviously broken bone, says he has chest pains, or has fallen and hit is head. *E.g.*, Lucas Dep. 12:6-15:17, 31:13-17.

Plaintiff does not dispute that the Sheriff makes policy and training decisions with regard to Jail employees, including their provision of medical care to inmates. In its previous summary judgment order, the Court noted that the Sheriff "acts on behalf of

7

[Columbus] when making decisions regarding medical care for the county inmates" and found that Columbus had delegated to the Sheriff the job of providing medical care to county inmates. *Youngs*, 2008 WL 4816731, at *9. In the summary judgment motion presently before the Court, Columbus presented no evidence challenging this finding, and the Court presumes for summary judgment purposes that the Sheriff is a final policymaker for Columbus with regard to the provision of medical care to inmates held in the Jail.

### III. Plaintiff's Claims

In this action, Plaintiff claims that Columbus violated Youngs's Fourteenth Amendment rights by failing to train the employees of the Muscogee County Sheriff on the provision of medical care in the Jail. To the extent Plaintiff attempts to resurrect the § 1983 claim against Columbus related to classification of Jail inmates, Columbus is entitled to summary judgment on those claims for the reasons set forth in the Court's previous summary judgment order. *Youngs*, 2008 WL 4816731, at *6, *8-*9. Plaintiff does not appear to assert any state law claims in this action.

### DISCUSSION

Columbus argues that it is entitled to summary judgment as to Plaintiff's claim regarding the provision of medical care in the Jail, which is the only claim asserted against Columbus in this action. In support of its motion, Columbus contends that Plaintiff

8

has not pointed to any evidence to show that a Columbus policy or custom caused Youngs's injuries. The Court agrees.[5]

Columbus may be held liable for a constitutional deprivation only if the deprivation results from the City's unlawful "policy or custom." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007); *accord Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff contends that Youngs's injury was the result of improper training of Jail employees in the provision of medical care to inmates. To sustain that claim, Plaintiff must point to evidence of a pattern of improper training and show that Columbus or the Muscogee County Sheriff was aware of the deficiencies in the training program.[6] *Skop*, 485 F.3d at 1145; *accord Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("A failure to adequately train municipal employees

---

[5]Curiously, Plaintiff's response to the City's summary judgment motion focuses on Plaintiff's argument that the Muscogee County Sheriff is an "arm of the county" when providing medical care in the Jail. *See generally* Mem. of Law in Resp. to Def.'s Mot. for Summ. J. The Court previously found that "the sheriff is an arm of the county in providing medical care in a county jail." *Youngs*, 2008 WL 4816731, at *8. Columbus did not ask the Court to revisit this issue; rather, Columbus argues that it had no policy or custom that was the moving force behind Youngs's injuries.

[6]Again, for purposes of summary judgment, the Court presumes that the Sheriff is a final policymaker for Columbus with regard to the provision of medical care to Jail inmates such that Columbus may be held liable for the Sheriff's policies and customs. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.").

9

constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.' " (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiff points to no evidence of improper training with regard to medical treatment in the Jail. It is undisputed that the Sheriff promulgated policies and procedures requiring Jail personnel to render medical assistance to inmates. It is also undisputed that the Jail employees who responded to Youngs's requests for medical assistance were familiar with those policies. Plaintiff, however, contends that the policies were inadequate. Though Plaintiff's argument is not entirely clear, the crux of Plaintiff's claim appears to be that Jail employees should have viewed Youngs's hip fracture as a medical emergency and responded under the Jail's emergency medical services policy; according to Plaintiff, it was inappropriate for Jail employees to make Youngs use the procedures for medical needs that are not emergencies. Thus, it seems that Plaintiff contends that, under the existing medical policies and procedures for the Jail, inmates with emergency medical needs could be denied immediate treatment based on the judgment call of a corrections officer with no medical training because the policy does not explain when an "emergency" exists.

Even if there were evidence that the Jail's medical policies and procedures were inadequate as Plaintiff suggests, Plaintiff points to no evidence that would give rise to liability on the part of the Sheriff or Columbus. There is no evidence that the corrections officers or medical staff at the Jail had a history of failing to recognize emergency medical needs of the inmates such that the Sheriff was on notice that the procedures in place amounted to deliberate indifference to the inmates' serious medical needs. Rather, the undisputed evidence suggests that Jail employees had a broad view of what constitutes a medical emergency requiring immediate attention and often erred on the side of caution when determining whether a medical need constituted an emergency. *E.g.* Lucas Dep. 12:6-15:17, 31:13-17. (stating that a medical emergency exists when an inmate is bleeding, appears to be seriously injured, has an obviously broken bone, says he has chest pains, or has fallen and hit his head). For all of these reasons, the Court finds that the Jail's medical procedures do not evidence a deliberate indifference to the serious medical needs of the inmates, and Columbus is therefore entitled to summary judgment on Plaintiff's claims.

## CONCLUSION

For the reasons set forth above, the summary judgment motion of Columbus (ECF No. 18) is granted. The only claims remaining in this

11

action are the individual capacity claims against the four individual Defendants.

IT IS SO ORDERED, this 6th day of October, 2010.

                                                    S/Clay D. Land
                                                        CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE