IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KLORIS TOLBERT YOUNGS, As     *
Executrix of the Estate of
deceased Christian Youngs,    *

    Plaintiff,                *

vs.                           *     CASE NO. 4:09-CV-141 (CDL)

CONSOLIDATED GOVERNMENT OF    *
COLUMBUS, GEORGIA, et al.,
                              *
    Defendants.
                              *

O R D E R

This action arises from injuries suffered by Christian Youngs ("Youngs") while a pretrial detainee at the Muscogee County Jail ("Jail"). Plaintiff, the executor of Youngs's estate, contends that Youngs was seriously injured when another Jail inmate assaulted him and that the individual Defendants—Floria Brooks, Angela Lawrence, Charles Lucas, and Joseph Yawn—failed to provide Youngs with timely medical care.[1] The Court previously granted Columbus Consolidated Government's ("Columbus") summary judgment motion as to all claims against Columbus. *Youngs v. Consol. Gov't of Columbus, Ga.*, No. 4:09-CV-141 (CDL), 2010 WL 3947046 (M.D. Ga. Oct. 6, 2010). The individual Defendants now move for summary judgment based on qualified immunity. For the reasons set forth below, the individual Defendants' summary judgment motions (ECF Nos. 41 & 43) are granted.

---

[1] Youngs's death was unrelated to the injuries he suffered at the Jail.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

The Court has previously recounted the facts, viewed in the light most favorable to Plaintiff, regarding the incidents giving rise to Youngs's injuries. *Youngs v. Johnson*, No. 4:06-CV-19 (CDL), 2008 WL 4816731, at *1-*4 (M.D. Ga. Oct. 30, 2008). The parties have not submitted any additional evidence regarding the incidents giving rise to Youngs's injuries, and the Court therefore incorporates by reference the "Background" section of *Youngs v. Johnson*. Plaintiff did submit the deposition of one of Youngs's treating physicians, which the Court discusses briefly below.

In summary, Youngs was a pretrial detainee at the Jail, and he was a minimum security inmate assigned to a two-man cell away from the general Jail population. *Id.* at *2. On May 19, 2004, another inmate—who was a maximum security inmate with psychiatric issues and who had on one prior occasion attacked two inmates—was placed in the cell with Youngs. *Id.* at *2-*3. While Youngs was asleep on the top bunk, the other inmate pulled him off the bunk, causing Youngs to fall to the floor. *Id.* at *3. Believing his leg was broken, Youngs screamed for help, but no one responded to his call. *Id.* Youngs climbed back up to his bunk and fell asleep until several correctional officers, including Defendant Lucas, came to his cell a few hours later, at approximately 3:30 a.m. *Id.* At that time, Youngs informed the correctional officers about the incident. *Id.* He also told them that his leg was hurting. *Id.* According to Lucas, Youngs was "just sitting there" on the top bunk and did not appear to be in extreme pain. Lucas Dep. 26:11-14, Oct. 5, 2006, ECF No. 24. Lucas did not deem the situation an emergency; Youngs was not bleeding, did not appear to be seriously injured, and did not have an obviously broken bone. *Id.* at 12:6-15:17, 18:20-21. There is, however, evidence that Youngs told Lucas that he was in extreme pain. Lucas Dep. Ex. 3, Medical Request (stating "L Leg Xtreme Pain from Fall").

3

Lucas went to the Jail clinic and spoke with Defendant Lawrence, a Jail nurse, about Youngs's complaint. *Id.* at 18:7-10, 18:22-25, 24:17-25:5. Lawrence told Lucas to get a sick call slip, have Youngs fill it out, and bring it back to Lawrence. *Id.* at 24:24-25:3. However, no one other than Lucas checked on Plaintiff again until approximately 6:15 a.m. *Youngs*, 2008 WL 4816731, at \*3-\*4. Although Lucas contends that he turned in the sick call slip, both Lawrence and Defendant Brooks, another Jail nurse, claim that they did not receive a medical request form from Youngs. *Id.* at \*3. Both Lawrence and Brooks, however, did hear a call over the intercom stating that an inmate was complaining of leg pain. *Id.*

At approximately 6:15 a.m., Youngs informed Defendant Yawn, a correctional officer, that his leg might be broken. *Id.* at \*4. Yawn consulted with Brooks and Lawrence, who said that nothing could be done until the physician assistant arrived at the Jail later in the morning. *Id.* Youngs did not see the physician assistant until approximately 10:45 a.m. *Id.* The physician assistant observed that Youngs "looked like a man that was in some obvious pain" and sent Youngs to a hospital, where Youngs underwent surgery for a fractured hip. *Id. See also* Terrell Dep. 10:23-24, Feb. 2, 2009, ECF No. 49 (stating that Youngs had a four-part fracture due to trauma). Plaintiff made no allegation and pointed to no evidence that the delay in medical treatment exacerbated Youngs's injuries.

4

Plaintiff claims that the individual Defendants were deliberately indifferent to Youngs's serious medical needs, thus violating Youngs's Fourteenth Amendment rights. Plaintiff does not appear to assert any state law claims in this action.

## DISCUSSION

## I. **Qualified Immunity Basics**

The individual Defendants all claim that they are entitled to qualified immunity. Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law. *E.g., Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A government agent is entitled to immunity unless his act is 'so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing.'" *Id.* (quoting *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)); *accord Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). Here, Plaintiff does not dispute that the individual Defendants were acting within the scope of their discretionary authority. The record demonstrates that all four

Defendants were engaged in activities within their job responsibilities during the events giving rise to this action. Accordingly, Plaintiff has the burden "to overcome the defense of qualified immunity." *Id.*

"To evaluate claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct." *Rehberg*, 611 F.3d at 838-39. "This two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Id.* at 839 (citing *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009)). In this case, the Court finds that Plaintiff has failed to point to sufficient evidence of a constitutional violation that caused harm to Youngs, and that ends the Court's inquiry.

**II. Deliberate Indifference to Serious Medical Need**

Plaintiff contends that the individual Defendants were deliberately indifferent to Youngs's serious medical needs by failing to transport him to the hospital at 3:30 a.m. or before. "An officer violates a detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1335 (11th Cir. 2004) (internal quotation marks omitted). "[T]he minimum standard for providing medical care to a pre-trial detainee under the

6

Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner." *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). Accordingly, the Court may rely on both Eighth and Fourteenth Amendment cases in its "deliberate indifference" analysis. *Id.*

To demonstrate that the individual Defendants had a deliberate indifference to a serious medical need, Plaintiff must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307. "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Id.* Here, though there is no evidence that the delay in treating Youngs's injury worsened his condition, there is evidence that Youngs had a four-part fracture that required surgery. Terrell Dep. 10:23-24. The individual Defendants cannot seriously dispute that this injury is a serious medical need.

The next question is whether the individual Defendants knew of a risk of serious harm. Plaintiff pointed to no evidence that Youngs was bleeding, had an exposed bone, or had another obvious sign of

7

injury that would have alerted Lucas and Yawn—the two officers who saw Youngs—that Youngs had a serious medical need. Plaintiff did, however, point to evidence that Youngs repeatedly complained of being in extreme pain and that Youngs told the officers he thought his leg was broken. There is also evidence that the physician assistant who saw Youngs observed that Youngs appeared to be in obvious pain. Based on this evidence, the Court concludes that a fact dispute exists as to whether Lucas and Yawn were aware of a substantial risk of serious harm.

A reasonable factfinder could also conclude that Lucas and Yawn failed to give Youngs's sick call slips to the nurses and that they failed to bring Youngs to the infirmary. There is no explanation in the record for these failures. "'When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference.'" *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (quoting *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994)). For all of these reasons, there is a fact dispute as to whether Lucas and Yawn were deliberately indifferent to a serious medical need.

Likewise, there is a fact dispute as to whether Lawrence and Brooks were deliberately indifferent to a serious medical need. Though it is undisputed that Lawrence and Brooks received complaints

8

from both Lucas and Yawn that Youngs was complaining of leg pain and a possible broken leg, the evidence shows that neither Lawrence nor Brooks saw Youngs for an evaluation. It is therefore reasonable to infer that the nurses knew that Youngs had some type of health risk and failed to do anything. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1328 (11th Cir. 2007) ("Choosing to deliberately disregard, without any investigation or inquiry, everything any inmate says amounts to willful blindness."). Furthermore, a reasonable factfinder could conclude that Lawrence and Brooks actually did receive sick call slips from Lucas and Yawn but ignored them. The record provides no explanation for why Lawrence and Brooks failed to investigate Youngs's complaint. Accordingly, a reasonable factfinder could conclude that Lawrence and Brooks were deliberately indifferent to Youngs's serious medical need.

**III. Causal Connection Between Deliberate Indifference and Injuries**

Even if the individual Defendants were deliberately indifferent to a serious medical need, there still must be evidence of "causation between that indifference and the plaintiff's injury." *Mann*, 588 F.3d at 1307; *Goebert*, 510 F.3d at 1327. If an inmate complains that a delay in medical treatment rose to a constitutional violation, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Lepper v. Nguyen*, 368 F. App'x 35, 39-40 (11th Cir. 2010) (internal

9

quotation marks omitted); *accord Goebert*, 510 F.3d at 1329 (recounting evidence regarding causal connection between treatment delay and inmate's injury). The crux of Plaintiff's claim in this action is that Youngs "had multiple surgical procedures to try and repair his shattered hip and femur and was permanently disabled." Compl. ¶ 21, ECF No. 1. Plaintiff has not, however, presented any evidence to demonstrate that the several-hour delay in medical treatment caused these injuries. Rather, the evidence suggests that Youngs's cellmate caused the injuries. Moreover, Plaintiff has not pointed to any evidence that the delay in treatment exacerbated Youngs's injuries, making the multiple surgeries necessary and rendering Youngs permanently disabled. In other words, there is no evidence that Youngs's prognosis and course of treatment would have been any different if the individual Defendants had sent Youngs to the emergency room the first time he complained of leg pain. The Court thus finds that even if Plaintiff has presented sufficient evidence that the individual Defendants were deliberately indifferent to Youngs's serious medical need, Plaintiff has not demonstrated a genuine dispute on causation. Without causation, there can be no claim for deliberate indifference to a serious medical need. *Mann*, 588 F.3d at 1306-07. Therefore, the individual Defendants are entitled to summary judgment.

CONCLUSION

For the reasons set forth above, the individual Defendants' summary judgment motions (ECF Nos. 41 & 43) are granted. There are no remaining claims in this action.

IT IS SO ORDERED, this 5th day of January, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE